Please report. My name is Brian Michaels. I'm here on behalf of Southern Oregon Barter Fair, and as a matter of procedure, I would like to reserve some time for rebuttal. All right. Counsel, please watch the clock. It's counting down. I see. All right. Thank you. First, I would like to raise the Stage 2 issues that they raised for the first time in their appellee's brief. One is that this issue is moot, and the other is that a facial challenge would not be available in this instance. Excuse me. Counsel, could you start the clock, please, now? I'm sorry. Thank you. That's all right. He was reserving me a lot of time. First is the mootness issue, which was resolved by the court at ER 65. And the second was a facial challenge, which the defendant claims was not available in this instance, which was resolved by the court at ER 71. These were each separate motions for summary judgment that the defendant filed and the court ruled against. It was improper for the defendant to raise them for the first time on their responsive or appellee brief. They would have been required to cross-appeal and ask this court to reverse the lower court's ruling on those issues. Each issue is not only without merit on its face, but it also is unworthy of discussion since they are procedurally and fatally defective. Similarly, as a matter of law, the law of the case doctrine would apply in this instance. As referenced in the briefs, this issue of the preliminary injunction was litigated and resolved below. Because it is a facial challenge to a statute, there is no other merit or facts to be deduced or obtained by the lower court. The entirety of the body of evidence is contained within the four corners of the statute. Therefore, a preliminary injunction on this issue would satisfy the law of the case doctrine. What's the standard, counsel, for issuing a preliminary injunction? Is it only a probability of success? As a matter of usual law, usually that's the case when there are facts to be determined at a subsequent evidentiary proceeding. But the only facts, the only merits in a facial challenge are contained within the four corners of the statute. There's nothing more to be deduced by the court or learned from the court. By the court, excuse me. But on a preliminary injunction, counsel, aren't you usually asking the court to move at a speed quicker than they're accustomed to moving? Well, in this instance, once again, because it's a facial challenge, the matter was completely brief. There was half a day's worth of evidentiary proceedings. The court was fully advised, and the court made its decision. How quickly did the court make its decision? Pardon me? How quickly did the court react to your request for a preliminary injunction? You mean in terms of days? Yes. Well, there was an original TRO, and they moved rather quickly on that. And the preliminary injunction was orally issued at the close of the evidentiary hearing at the preliminary injunction. And I believe it was, you know, I can't be – I don't know the accuracy of the three to four days that the actual written judgment came down. But you got a preliminary injunction at the end, at the close of oral argument. It was more of an evidentiary proceeding in the sense that there were witnesses and things of that nature. But yes, orally from the bench. I'm not sure that that's the really deciding positive factor here. The issues for the law of the case are whether or not there were availability to explore the merits of the case or whether or not there has since become new controlling nature. This is a – because it's a facial challenge to the statute, this is really a matter of law and not a matter of fact or evidence. So the notion that ordinarily in a preliminary injunction, they see that they're going to succeed on the merits as a matter of law based upon the facts that are done quickly and summarily, as Your Honor suggests, at a preliminary injunction proceeding. But the four corners of the statute remain the same no matter how quickly or summarily the preliminary injunction is taken. Now, the defendant made some motions about Thomas being new controlling law since the preliminary injunction was issued. I briefed that in my briefs to this court. And in our view, A, Thomas said himself and in itself that it was not – and he was not announcing any new law. It was really reciting law that hadn't been before. So without any new evidence, without any new merits and without any new law on the subcontrolling law on the subject, the preliminary injunction is the law of the case for the facial challenge to the statute. I – if the Court should not hold that the law of the case applies in this, I believe that the statute would fail on its face even if reviewed. That the law of the case is established by a preliminary injunction rather than the court's final ruling in the case, which is to grant summary judgment for the other side. Would that be the law of the case, the final order? I'm sorry. Wouldn't the final order of the court really be the law of the case as far as we're concerned? There are elements for which a decision of the lower court would not apply the law of the case doctrine. There would have to be new evidence, new facts presented, or further exploration of the facts presented, which doesn't exist because it's a foregone facial challenge. So I guess we have to come at it from outside the front door, if you would, because there's no case that says a facial challenge is not law of the case under a preliminary injunction, and there's no case that says a facial challenge is law of the case under a preliminary injunction. So we need to look at the standards and elements necessary. Is there a case that says the law of the case can be established at a preliminary injunction phase? What I meant to say was I haven't been able, and I don't think the defendant has been able for its position, to find a case that says either way, that when a facial challenge is at issue in the preliminary injunction, law of the case does not apply. The defendant has not put, I'm sorry, the attorney has not put that up. And I have to assume they haven't found one. And I have not been able to find a case that says when the facial challenge is at the preliminary injunction stage, it does do, law of the case does apply. So we have to look beyond the conclusion into the elements related to a law of the case doctrine and what would be needed in order for the law of the case doctrine to not. Isn't a legal ruling at the preliminary injunction phase only tentative and the district court can later change its mind and say I was wrong? Well, I think they have to have new evidence or new facts or new information, either as a matter of law by new controlling law, or new facts that was unavailable. I think this facial challenge at a preliminary injunction for law of the case, as far as I can tell, is a new issue. There's a first impression. If the only evidence to be deduced, if the only merits to be deduced is contained within the four corners of the statute, what is new between the preliminary and the permanent injunction? What is new for the court to consider? What would change the court's mind? There's nothing for any party to give the court, as a matter of fact, and unless there's new controlling law, there's no law to change the court's mind. And that's our position. And the state or the defendant also had declined to intervene originally to save its statute. It was asked by the court to be so, and it declined. So it has been essentially in privity with the county that didn't litigate that issue. So if the law of the case does apply, it does apply in this issue. However, if the court does not find that a preliminary injunction on a facial challenge would be the law of the case, I think the statute fails on its face in any event. The strongest argument against the statute, of course, is the absence of any requirement for when an application for a permit needs to be ruled defined by the governing body or the licensed authority. Now, this language is not overtly announcing itself in the statute. It doesn't say you don't have to do this. But in law, like in life, many times one can see more clearly what is there by one noticing what is not there. And in the entire language of the statute, it does give certain time constraints. So the authors of the statute do contemplate certain time frames. The applicant who does the mass gathering, which is an application for a mass gathering. Three thousand or more people lasted more than 24 hours, but no more than 72 hours. And the the applicant, when the gathering is over, there are 72 hours to clean up. So they're contemplating time frames for the permittee. They're contemplating time frames for when government officials need to submit their response to the application. You need to submit it within 10 days before the hearing or in some instances by the hearing. And the hearing needs to be published at least 10 days prior to the hearing actually being held. So they're contemplating certain time frame deadlines. But what is conspicuous by its absence from the statute is any requirement on the governing body to rule on the application for permit. And in this instance, an application issued an application submitted April 1st for an event that was supposed to take place October 12th, lay languished for five months before being ruled upon. And it was ruled upon very close to the incident of the day of the of the event. Now, there's a fact. Why is that an as applied challenge? Counsel? Well, I mean, even Thomas talks about how important it is to have firm deadlines for when an application needs to be applied in order for a in order for a licensing scheme to pass constitutional muster. It mentioned that specifically. And I mentioned it in my brief. And it upholds those from Lakewood City of Lakewood versus Plain Dealer. Holds that from Forsyth County versus movement. It holds that from even Friedman, even though it mentions that it doesn't adhere to the specific strict guidelines of Friedman and a content neutral statute licensing scheme. It does isolate the one issue of that. It needs there needs to be a firm deadline for which an application must be ruled upon, because an application languishing is an application being denied. And in fact, city of Lakewood versus Plain Dealer use that very language. The late is denied. And in this instance, it was a clear example of how they tried to maneuver the availability of the availability of that discretion into a position where my clients were very close up to their event date prior to receiving an answer to their application. This would put a heavy burden on somebody trying to conduct a gathering because there's very little time to go to court. It's very good. They're without an opportunity to prepare. They're without an opportunity to advertise. And absent that opportunity to prepare and absent that opportunity to contract with support services, really, the county is putting an event such as this, which, once again, is 3,000 or more people, 24 hours to 72 hours, in health jeopardy. As you can tell, that many people for that long a period of time need a great deal of support services. So this sort of delay is silencing this favored speech. Also, I'd like to take a couple of minutes to talk about that. There has been a new case in my circuit on relating to comments that is favorable to me. Unfortunately, it was only last night that I realized I had to get that to you. And then a week ago, a week prior to today, I would like to give you that citation if the court would permit me. But I would only say that there is a case in the Ninth Circuit since Thomas that would concur with what I'm saying here today about the application to contract mutual statute. Now, in regard to the delegation of permit fees, the defendant makes some responsive gestures toward the fact that the amount of money isn't that significant. There's a cap. There's $5,000. And anyway, an indigent person who can't afford to pay the fees can go to court. Well, it's important to remember that the Forsyth County case really only involves hundreds and hundreds of dollars. And this permit application fee involves thousands and thousands of dollars. So the amount of money really is significant in terms of the availability of a permit application to go to court. It simply establishes an upper limit of $5,000 and provides standards for waiving the fee. And the $5,000 must be reasonably connected to the cost of processing the fees. They're not charging you for police protection. They're not charging you for garbage pickup or anything like that, only for the cost involved in processing the fee. I understand that language is in the statute, but we would submit that that language was without specificity. For example, my clients were charged $5,000 right off the bat from the first time the Oregon Mass Gathering Action Mass Gathering statute was applied to them. Yeah. Wasn't your client actually charged $12,000? In 1990, 1994, they were charged $5,000. In 1995, they were charged $3,500. In 1996, they were charged $12,000. But this sort of discretion left to the licensor as to how much to charge because there's no specific marriage to what the charges are for, only this vague sort of reasonableness. Counsel, all of that is still before the district court in your as-applied challenge, which is not before the court today, right? Some of that is, the $12,000 is, although it's no longer before that case has become resolved. In my client's favor, if that's just to drop that second shoe. But in terms of applying the $5,000 permit application fee, this particular county has arbitrarily applied that fee to whichever way it seems to want to think it's applicable differently in each of the three years. Because the word reasonableness, I think, is one of those hiding words in a statute such as this because it really means your discretion. Because whatever I think is reasonable as a licensor clearly is within my discretion. I always think I'm reasonable. Don't you? We all do. So the word reasonable really should be read as discretion. Counsel, you don't – do you challenge that the county can charge some fee in connection with processing the application? Well, I don't dispute that there can be a charge filed. But what we have to look for in these licensing schemes is these kind of hidden creatures of discretion that don't naturally jump out and announce themselves. What kind of – They should be hiding behind the language that is actually in this statute. What kind of language should the legislature have put into the statute that would have cured this problem? Well, something along the lines of that the county would have to present its accounting for to the applicant for the basis for the permit processing. So if there's actual physical numbers, not what they feel is reasonable. What case authority supports that argument? What's your best case authority to support the – your assertion as to what should have been contained? Well, again, these licensing schemes are – historically have been subject to failure when there's – when there are bases for discretion, to favor or disfavor a – But your – Or favored speech or disfavored speech. When Judge Biby asked you what the statute should have contained, you said there should have been an accounting mechanism there. And I ask you, what's your best case authority for the proposition that an accounting mechanism is required in order to pass constitutional muster? Well, I – that was just my suggestion as a possible resolution to that problem or solution to that problem. I think what the strong case authority is, is that the statute, the licensing statute, should not have any discretionary function that allows the licensor to favor favored speech and disfavor or silence disfavored speech. And it's been clear that they can do that in the application process as well as in the application of fees to the applicant. I have less than four minutes I'd like to withhold. All right. Unless you have a question or more. Thank you. May it please the Court, Christina Hutchins representing the State of Oregon in this matter. Unless the Court wants to ask me specific questions about the doctrine, law of the case, I'm not going to spend any time on that. I think it's adequately briefed in my brief. And I would say on page 11 of my red brief, we do cite a United States Supreme Court case, University of Texas v. Kaminish, which basically says a decision on a preliminary injunction is not binding on the parties on a trial on the merits. I'm going to discuss two points in my argument. The first, I'll focus on why Oregon's Mass Gathering Act is a content-neutral time, place, and manner regulation and therefore is not subject to any extraordinary procedural requirements under Friedman v. Maryland. And then secondly, I'll shift the focus to discuss why this Court should affirm the District Court's opinion on the alternative basis that the Gathering Act is not subject to a facial challenge but is not merely directed at patently expressive conduct. And I believe that that is appropriately before this Court as an alternative basis for affirming the District Court's ruling and that we were not required to cross-appeal or raise that as an assignment of error in our brief, that we could argue that as an alternative right for the wrong reasons of argument. Although logically, I should discuss whether or not a facial challenge can be brought against this Act, because the District Court actually made its ruling on the basis of the fact that this is a content-neutral time, place, and manner regulation, I'm going to start with that issue first. The District Court properly determined that the Mass Gathering Act is content-neutral because the decision of whether to issue a permit is made without reference to the content of whatever expressive activity may occur during the gathering. In other words, the nature of the Mass Gathering itself is of no consequence in determining whether to issue the permit. The Act says the county shall issue the permit if the applicant can show compliance with the health and safety rules that are very specific, and they're much like building code type of things. They address things such as appropriate water for each person per day, appropriate number of toilets according to the number of people that are going to be attending, emergency services, those types of specific rules and health and safety regulations that the applicant has to show compliance with. And the permit application is only triggered if there are going to be 3,000 people or more, and they're going to have an overnight stay, a consecutive 24 hours. At no time in determining whether to issue a permit is the county called upon to evaluate the content of any expressive activity, and for that reason it's content-neutral. Also, because it has those sufficient guidelines, it has those health and safety rules that are applied to determine whether a permit should be issued, the applicant can meet those rules and regulations, it has adequate safeguards that are subject to judicial review. The applicant, if a permit is denied, can go to the circuit court and have that reviewed. Also, there are ample opportunities of other channels of communication. For instance, you could have less than 3,000 people attend your gathering and have an overnight stay, or you could have less than consecutive 24 hours and you would be able to engage in your activity without having to go through the permit process. Counsel, what's the status of the district court case at this point? I believe that the plaintiffs did receive a verdict in their favor, and Jackson County subsequently settled the case, I believe. Appellant argues that there are inadequate safeguards to minimize the county's discretion in whether to issue a permit on the basis of basically two things, that there is a definite timeline for which a permit needs to be either denied or permitted, and also that there is a discretionary fee. All of the cases that plaintiffs cite in support of its position that that means that Oregon's Mass Gathering Act does not have sufficient safeguards are in cases in which the permit scheme was content-based. That's true in Forsyth, that's true in Rainbow Family, that's true in, I believe it was Lakewood. This court has said that in Amster, for instance, excuse me, sorry, that's true in Mardi Gras. That's another case that plaintiffs relied on heavily for this idea that if you have any type of discretion in issuing, whether to issue a permit, that that somehow makes it subject to a facial challenge. But if you look actually at Thomas, that case actually involved a situation where the governing official could in fact waive entirely the permit requirement and have discretion to do that, and yet the court found that that did not mean that it was subject to a facial challenge for unbridled discretion, because the fact is that it was a content-neutral time, place, and manner regulation. So the first plaintiff has to show that somehow this is content-based, and it simply isn't. And to the extent that the plaintiff is arguing that, well, look at what happened in my case, look at the fees that were imposed, you can bring in the plaintiff has brought an as-applied challenge to the constitutionality of the statute, arguing that in this case the decision-maker applied the statute in a non-constitutional manner. And that, in fact, is what they did at the trial court level. But that does not make for a facial constitutional challenge to the statute. Counsel, in the Forsyth County case, how did the ordinance in that case differ from the statute in this case? Because I thought it talked about private demonstration. I believe in Forsyth – let me just – Oh, in that case, the fee that was imposed in Forsyth had to do with a reasonable cost for maintaining public order. And that meant that the governing body that was issuing the permit could decide to impose a fee based on how it viewed the listener's reaction to the content of the speech. So in that way, it was content-based. So the ordinance itself was not content-based, was it? Yes. Well, the permitting scheme said that you can impose a fee that's reasonably related to the cost of maintaining public order. And that, in and of itself, the court viewed that as a way in which the governing body had to evaluate the content of the speech in order to determine what fee to impose when issuing a permit. And that's completely different from our discretionary fee. Wouldn't that be as applied, then, as opposed to a facial challenge? Well, I think they considered that content-based because the city had to evaluate the content of the speech to be able to determine what the fee would be. In our situation, the fee can only be reasonably related to the cost of assessing the application. It cannot be raised or lowered depending on what our view of a listener's reaction to the speeches may be. And what factors would the county use to determine the cost of assessing the application? What factors go into that determination? I'm not sure exactly how they would determine the cost of assessing the application. I think that because that is the only determination in determining what fee, and that it's capped at $5,000, and there is a waiver provision if it turns out that the applicant cannot afford the fee that's imposed, all of those factors make it have adequate standards and guidelines. I don't think that statute is required or any case law requires the county to set forth exactly, you know, we're going to charge $0.10 per copy of the application per page, and we're going to charge $25 for each assistant that touches the paper. I don't think that that's something that's required to be put into the statute itself in order to have adequate safeguards. Doesn't there have to be some assurance that it's not unfettered discretion? Well, I think that is in the fact that it has a cap of $5,000, it has a waiver provision, and also that it has to be reasonably related to our costs. I think if we impose a fee that was too high, they could bring an as-applied challenge, and we would have to put forth evidence showing what our reasonable costs in assessing the application were. But I don't think the fact that we don't set that out in the statute makes it unfettered discretion. We don't have unfettered discretion. We have to have it reasonably related to our costs of reviewing the application. Counsel, $5,000 seems like a lot of money for an application fee. I'm trying to think of any other situation, applications for college or law school or applications for a license or something that would require $5,000 for a processing fee. That seems like a very, very large amount of money to me. I don't really have any knowledge of exactly what the $5,000 would entail. I'm sure that that is a conservative estimate or an estimate since they're making it that be the maximum. They're assuming that most times it would be much lower than that. But in fact it was not here, was it? And that's where the as-applied challenge comes in. I mean, if we assess, as the jury found, if we unconstitutionally apply that fee provision by assessing too much of a fee, then that can be a grounds. Let's suppose the statute said you can charge up to $25,000 for the application fee. Doesn't that put in the hands, doesn't that place the idea in the hands of the administrator that there's a lot of discretion here? And doesn't it create a danger that we might start charging for other things? We might start charging for police protection, which encounters the problem that you raised a minute ago of the heckler's veto, which we determined that this is likely to be a disruptive gathering and therefore require a lot of police, so let's get our costs back up front by charging them a large processing fee? Well, I think, again, that is going to have to be addressed in an as-applied challenge. When you're looking just at the face of the statute, as long as we are putting in the statute that our fee has to be reasonably related to the cost of assessing the application, that it's not going to be... But you don't bear the burden of coming forward to justify the fee in the first place, do you? No, I don't believe that you do. In other words, if there's a problem here, it forces the applicant to file a lawsuit. That's true. So the burden of challenging all of this really doesn't fall on the government. It falls on the applicant. Well, I think the government first has to have a statute that has those guidelines. We are only going to charge a fee for the reasonable cost of assessing an application. That's what our guidelines are. Now, if the argument is that, in fact, we're imposing a fee that has nothing to do with the cost of assessing that application, then I think that has to be a situation where the plaintiff would have to go to a circuit court and have our decision reviewed. But it's not going to be a grounds for attacking the spatial constitutionality of the statute. How much evidence does the government have to come forward with in an as-applied challenge in order to justify that its fees are reasonably related? And is the term reasonably related because we are dealing with the challenge under the First Amendment? Ought we to require some greater kind of scrutiny, something along some kind of strict scrutiny? The court, for example, has been in an Oregon case, was very, very particular about fees that Oregon could charge under a dormant commerce clause and got down to sort of dollars and cents in demanding that Oregon be very, very precise in its burden. Why shouldn't the county have a similar burden here? Well, they may very well have a similar burden. Well, if it just has to be reasonably related, that doesn't have to be sort of terribly related. Well, I think the circuit court judge makes the determination of what it would be persuaded by in terms of the evidence that the county would provide in terms of saying this is what it was. These were the costs associated with reviewing the application. Now, I don't think that has anything to do with the face of the statute, whether the statute on its face is unconstitutional. I mean, we do have the guideline there that says, you know, it has to be reasonably related to the cost of assessing the application. Could the county charge for the time spent by its various employees? In other words, could it prorate the time spent by, let's say, an accountant in reviewing the application? Sort of prorate the time and say, well, we're going to charge $85 an hour, and the accountant spent so many hours, and therefore we're going to recoup salary costs for county employees? Or is it just copying costs? Because I'm not sure exactly what goes into assessing the application, I don't want to put forth exactly what it would be that the county would use as a basis for determining what its costs were in assessing the application. I'm not sure. It could be that, you know, it would have to have professionals come look at the application to see if it's meeting the necessary health and safety regulations. I think, though, that the important part is that the way we've set it up in our statute, it is related to assessing the cost of assessing the application. It's not related to the content of the speech, and it doesn't mean that we have to somehow evaluate whatever expressive activity is going to occur in this mass gathering. I mean, this act applies no matter what, whether people are coming together for speech or they're coming together for business patronage, which is actually what the barter fair seems to sound like when talking about vendors and participants. It doesn't seem to be a situation that's necessarily expressive conduct. Which leads me, then, to the facial challenge issue. Do you know of any other scheme in Oregon in which applicants are charged a processing fee? For example, if you're applying for a business permit or a construction permit, are you charged fees for those application permits that give as much discretion as you've got in this case? You charge for the building inspector's time. The building inspector has to come out to inspect the property, to walk the property. Are you charging for that? Having a sister-in-law who's a general contractor, I can tell you that they charge for just about everything in certain permits. If you go to Sherwood, they have the highest building permits for contractors that there are. And, yes, it's each individual person that the city has to send out to evaluate whether or not you're meeting the building codes is subject to a fee. I don't think that that, because it's not based on any kind of First Amendment issue, there isn't going to be a constitutional problem with that type of scheme. And that's the same here. We have a content-neutral time, place, and manner regulation. But we do have a danger with a mass gathering act in which we have people who may be assembling for the purposes of petitioning the government that we don't have with a construction permit scheme. Correct. But if you look at it, again, looking at a facial challenge, if you look at some of the nicer cases that have been discussing ordinances, for instance, that prohibit sitting or lying down on a sidewalk, this court has determined that those are not subject to a facial challenge because they don't necessarily entail expressive conduct or they're not commonly associated with expressive conduct. And I think that's what we have here, too. Although a mass gathering may have expressive conduct, that person may show, if there's some sort of ambiguous discrimination, can maybe show that the county somehow applied its mass gathering act in an inappropriate or unconstitutional manner. The fact that it does not always necessarily regulate pantously expressive conduct means that it shouldn't be subject to a facial challenge at all. And our alternative argument would be that the district court was incorrect in ruling that it could be subject to a facial challenge. And I would argue that another reason why the discretionary fee does not render this unconstitutional, if you look at the Thomas case itself, again, that was a situation where the governing body had discretion to simply say, you don't need to meet our permit requirements. Obviously, that could lead to a situation where there could be ambiguous discrimination, and the United States Supreme Court in Thomas said, you know, if that's the situation, you need to bring an as-applied challenge. It's not appropriate to make that type of argument on a facial challenge when you're dealing with a content-neutral time, place, and manner restriction or regulation. Unless the court has any questions. Thank you, counsel. The battle. I find it first interesting that the defendant's counsel began once describing the fees, began by calling ended up calling them discretionary fees. I think that really speaks to the heart of the inability to explain that portion of the statute without really recognizing the fact that it is a discretionary fee. And as we know, the underlying case law, that there should be no unbridled discretion on the part of a licensor in the application of fees toward the applicant or in the application or the ability to deny the application is just unconstitutional. A licensor should be almost a blind and deaf ministerial act, unguided, guided only by the terms of the statute without any thought to be given within the licensor's. Counsel, what's your response to opposing counsel's position that the statute is saved because, the ordinance is saved because it has to be reasonably related to the cost, the fee has to be reasonably related to the cost of assessing the application? One, like I said earlier, I think reasonable is just a buzzword or disguised word for discretionary. Unfettered discretion? Unfettered within the $5,000 cap. But, you know, like I said, foresight, which also used the word reasonably related, but only involves hundreds of dollars. And to be able to silence speech that you disfavor by applying greater amounts of money to the ability to speak your speech is unbridled discretion. And, for example, my client... Didn't that last argument you made, doesn't that go to an as-applied challenge, that they were doing that to stop speech? Well, I think the word also would come into mind there. I don't think it prohibits an as-applied challenge. But all of the facial challenges that are being issued, and they were issued, I mean, and they have been cited by the lower court. There was Linnick that was decided by this case. There was Lakewood, Plain Dealer. There was Foresight. All could have been an applied challenge. But what the courts have said is you've got to look at the four corners of the statute and find out whether or not, in this instance, there are areas of unbridled discretion given to the licensor that might tend to allow them to favor, favor speech and disfavor and silence disfavored speech. And in terms of Thomas, even Thomas said, of course, even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression. But that's as-applied. Yeah. I'm not sure. Well, I think the words are confusing. They can be applied that way. So what Thomas goes on to say is, therefore, under certain circumstances, you can't have a facial challenge so that to avoid that sort of application to, I believe, the judge to your left indicated that the burden would be on the applicant, and the courts disfavored that. So your argument is if a statute or ordinance can be applied in such a way as to stifle free expression, then a facial challenge is successful, can be successful? Is that your argument? Well, under certain circumstances, Thomas goes on to say, moreover, the Park District Code had issued in Thomas, process of applications within 28 days and must clearly explain its reasons for any denial. And so shifting to the application process deadline, Thomas seems to indicate that it has applied challenge might not, I'm sorry, facial challenge, a statute would be saved from facial challenge if it had a definite application timeframe deadline. In this case, 28 days was sufficient. And it used the words, moreover, and it uses its words carefully, as you know. So it finds the application process time to be a significant adherence by the licensor in order so that they are guided when they need to process a claim, when they need to process an application. And I think the same unbridled discretion, the same at the whim of the licensor applies to the application fees, as was mentioned in foresight. To have that sort of unbridled discretion on the licensor to say, I like these people. I'm going to rule on their application within 20 days and only charge them $300. I don't like these people. I'm going to rule on their application five months just before their event. I'm going to impose all of these conditions. And, in fact, I'm going to charge them $5,000. The facial challenges are there to avoid those sorts of pitfalls. But not all. Thank you, counsel. We understand your argument. The case just argued is submitted. The next case on calendar for argument, McGarry v. City of Portland, has been continued. The final case on calendar is FEC v. Rivera.
judges: Alarcon, Rawlinson, Bybee